UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DAMIEN GREEN,

    Plaintiff,

v.

DEREK HENNING, TODD HAMILTON, DR. ALLEAH PYNENBERG, JAMES ELSINGER, and KURT SCHIERLAND,

    Defendants.

Case No. 22-CV-702-JPS

**ORDER**

**1.    INTRODUCTION**

In June 2022, Plaintiff Damien Green ("Plaintiff"), an inmate confined at Green Bay Correctional Institution ("GBCI"), filed a pro se complaint under 42 U.S.C. § 1983 alleging that Defendants Derek Henning ("Henning"), Todd Hamilton ("Hamilton"), Dr. Alleah Pynenberg ("Pynenberg"), James Elsinger ("Elsinger"), and Kurt Schierland ("Schierland") (collectively, "Defendants") violated his constitutional rights. ECF No. 1. In January 2023, the Court screened Plaintiff's complaint, concluding that Plaintiff could proceed on an Eighth Amendment deliberate indifference claim against Schierland and Henning and on an Eighth Amendment conditions of confinement claim against Pynenberg, Elsinger, and Hamilton. ECF No. 13 at 6.

Now before the Court is Defendants' motion for summary judgment on exhaustion grounds. ECF No. 18.[1] For the reasons discussed herein, the Court will grant the motion and dismiss this case without prejudice.

## 2. LEGAL STANDARD

### 2.1 Summary Judgment Standard

Federal Rule of Civil Procedure 56 provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016). A fact is "material" if it "might affect the outcome of the suit" under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The court construes all facts and reasonable inferences in the light most favorable to the non-movant. *Bridge v. New Holland Logansport, Inc.*, 815 F.3d 356, 360 (7th Cir. 2016). "At summary judgment a court may not assess the credibility of witnesses, choose between competing inferences or balance the relative weight of conflicting evidence; it must view all the evidence in the record in the light most favorable to the non-moving party and resolve all factual disputes in favor of the non-moving party." *Abdullahi v. City of Madison*, 423 F.3d 763, 769 (7th Cir. 2005) (citing *Anderson*, 477 U.S. at 255).

---

[1] Confusingly, Defendants occasionally, but inconsistently, refer to this motion as a "partial" one, ECF No. 18 at 1, notwithstanding that they ultimately move for summary judgment on all of Plaintiff's claims and, accordingly, for the dismissal of the case, ECF No. 19 at 4.

Ultimately, "the non-movant need not match the movant witness for witness, nor persuade the court that [his] case is convincing, []he need only come forward with appropriate evidence demonstrating that there is a pending dispute of material fact." *Waldridge v. Am. Hoeschst Corp.*, 24 F.3d 918, 921 (7th Cir. 1994) (collecting cases). But simply "denying a fact that has evidentiary support 'does not transform it into a disputed issue of fact sufficient to survive a motion for summary judgment.'" *Uncommon v. Spigen, Inc.*, 305 F. Supp. 3d 825, 838 (N.D. Ill. 2018) (quoting *Roberts v. Advocate Health Care*, 119 F. Supp. 3d 852, 854 (N.D. Ill. 2015)).

### 2.2 Exhaustion of Prisoner Administrative Remedies

The Prison Litigation Reform Act ("PLRA") establishes that, prior to filing a lawsuit complaining about prison conditions, a prisoner must exhaust "such administrative remedies as are available." 42 U.S.C. § 1997e(a). To do so, the prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). He must do so precisely in accordance with those rules; substantial compliance does not satisfy the PLRA. *Id.*; *Burrell v. Powers*, 431 F.3d 282, 284–85 (7th Cir. 2005). A suit must be dismissed if it was filed before exhaustion was complete, even if exhaustion is achieved before judgment is entered. *Perez v. Wis. Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999). The exhaustion requirement furthers several purposes, including restricting frivolous claims, giving prison officials the opportunity to address situations internally, giving the parties the opportunity to develop the factual record, and reducing the scope of litigation. *Smith v. Zachary*, 255 F.3d 446, 450–51 (7th Cir. 2001). Failure to exhaust administrative remedies is an affirmative defense to be proven by a defendant. *Westefer v. Snyder*, 422 F.3d 570, 577 (7th Cir. 2005).

### 2.2.1 Inmate Complaint Review System

The Wisconsin Department of Corrections (the "DOC") maintains an inmate complaint review system ("ICRS") to provide a forum for administrative complaints. Wis. Admin. Code § DOC 310.04. The ICRS "allow[s] inmates to raise in an orderly fashion issues regarding department policies, rules, living conditions, and employee actions that personally affect the inmate or institution environment, including civil rights claims." *Id.* § DOC 310.01(2)(a). Before commencing a civil action or special proceedings, "inmate[s] shall exhaust all administrative remedies the [DOC] has promulgated by rule." *Id*. § DOC 310.05.

There are two steps an inmate must take to exhaust the available administrative remedies. First, the inmate must file an offender complaint with the Institution Complaint Examiner ("ICE") within fourteen days of the events giving rise to the complaint. *Id.* § DOC 310.07(2). The ICE may reject the complaint or return the complaint to the inmate and allow him or her to correct any issue(s) and re-file within ten days. *See id.* § DOC 310.10(5), (6). If the complaint is rejected, the inmate may appeal the rejection to the appropriate reviewing authority ("RA") within ten days. *Id.* § DOC 310.10(10).[2] If the complaint is not rejected, the ICE issues a recommendation of either dismissal or affirmance to the RA. *Id.* § DOC 310.10(9), (12). The RA will affirm or dismiss the complaint, in whole or in part, or return the complaint to the ICE for further investigation. *Id.* § DOC 310.11(2).

---

[2] The ICRS defines a "reviewing authority" as "a person who is authorized to review and decide an inmate complaint." Wis. Admin. Code § DOC 310.03(15).

Second, if the ICE recommends, and the RA accepts, dismissal of the complaint, the inmate may appeal the decision to the Corrections Complaint Examiner ("CCE") within fourteen days. *Id.* §§ DOC 310.09(1), 310.12. The CCE issues a recommendation to the Secretary of the Department of Corrections, who may accept or reject it. *Id.* §§ DOC 310.12(2), 310.13. The inmate exhausts this administrative process when he or she receives the Secretary's decision. *Id.* § DOC 310.13(2), (3). If the inmate does not receive the Secretary's written decision within ninety days of the date of receipt of the appeal in the CCE's office, the inmate shall consider the administrative remedies to be exhausted. *Id.* § DOC 310.13(4).

3. **FACTUAL BACKGROUND**

Defendants' motion for summary judgment addresses the issue only of whether Plaintiff exhausted his administrative remedies as described in detail above. The Court finds the following facts relevant to the disposition of that issue.

On July 1, 2021, Plaintiff self-harmed by putting plastic in his penis (the "Incident"). ECF No. 22 at 5; ECF No. 19 at 4.[3] On August 27, 2021, the ICE received an inmate complaint relating to the Incident, the brief summary of which was that "RN Henning refused to treat [Plaintiff] after he shoved stuff up his penis." ECF No. 21-1 at 13; ECF No. 22-1 at 20 (hereinafter "GBCI-2021-13032"). The ICE rejected GBCI-2021-13032 as untimely on September 1, 2021. ECF No. 22-1 at 16 ("The inmate has a date of incident as 07/01/21 but he didn't submit the complaint until 08/27/21

---

[3]Plaintiff alleges that, in relation to the Incident, Schierland and Henning were deliberately indifferent to his need for medical care and that Pynenberg, Elsinger, and Hamilton unconstitutionally confined him when they allegedly strapped him down. ECF No. 13 at 4–5 (citing ECF No. 1).

which is nearly two months later . . . . Beyond 14 calendar day limit."). Plaintiff's appeal of that disposition, *see* ECF No. 22-1 at 21, was also denied, *id.* at 14–19.

Plaintiff's Inmate Complaint History Report provides that the DOC received six inmate complaints from Plaintiff between the date of the Incident and the date of the DOC's receipt of GBCI-2021-13032. ECF No. 21-1 at 12–13; ECF No. 22-1 at 16 ("[Plaintiff] submitted seven complaints [including GBCI-2021-13032] since 07/01/21[,] so he had access to the ICRS."). None of those other six complaints pertained to the Incident.

Plaintiff alleges that he additionally submitted two inmate complaints relating to the Incident prior to GBCI-2021-13032 but that he received no ICE receipt back from either. ECF No. 22 at 5–6. No document in the record supports that contention, and Plaintiff does not provide copies of those alleged complaints. Plaintiff does not allege that he made any further inquiry with ICE or the DOC generally regarding those alleged complaints and the alleged absence of receipts. Additionally, GBCI-2021-13032 makes no reference to any previous attempt to submit an inmate complaint about the Incident.

The ICE at GBCI who recommended dismissal of GBCI-2021-13032 avers that "[i]f an inmate submits an inmate complaint, there is always a record of it being received by the ICE," irrespective of the ultimate disposition of the complaint. ECF No. 27 at 2. He further avers that "[t]here is no record of [Plaintiff] submitting two inmate complaints regarding the [I]ncident before he filed . . . GBCI-2021-13032," but that there are records showing that Plaintiff "submitted two inmate complaints around the same time he filed GBCI-2021-13032 that were returned to him," one of which Plaintiff attempted to submit on June 24, 2021, the other of which he

attempted to submit on July 30, 2021, and neither of which pertained to the Incident. *Id.;* ECF Nos. 27-1 and 27-2.

**4.   ANALYSIS**

Defendants request summary judgment on a single ground: that Plaintiff failed to properly exhaust his administrative remedies before filing the instant lawsuit. Specifically, Defendants write that "[t]he date of the incident was July 1, 2021, but [Plaintiff] did not submit the inmate complaint until at least August 24, 2021, at least 54 days after the underlying incident occurred," rendering his complaint untimely and his action therefore unexhausted. ECF No. 19 at 3–4.

In response, Plaintiff asserts that he 1) submitted, or perhaps more accurately attempted to submit, a complaint relating to the Incident two times before his third complaint, GBCI-2021-13032 on August 24, 2023, was finally acknowledged; and 2) "never was in the right m[e]ntal [state of] mind" to properly exhaust because he was dizzy and lightheaded from his hunger strikes. ECF No. 22 at 5–6; ECF No. 23 at 2 (Plaintiff declaration that he "sent to ICE Department 3 complaints and the first 2 of them they never got back with me at all.").[4] Because the parties do not dispute that Plaintiff submitted GBCI-2021-13032 more than "14 days after the occurrence giving rise to the complaint," Plaintiff's case is subject to dismissal for failure to exhaust if neither of his above two arguments are successful. Wis. Admin. Code § DOC 310.07(2); *Conyers v. Abitz*, 416 F.3d 580, 584 (7th Cir. 2005) ("Failure to comply with administrative deadlines dooms the claim except

---

[4]Plaintiff also argues that he did not come off observation until July 4th or 5th and therefore could not have filed his complaint any sooner than that date. ECF No. 22 at 5–6. But even taking those several days into account, GBCI-2021-13032 would still be untimely.

where the institution treats the filing as timely and resolves it on the merits.") (citing *Riccardo v. Rausch*, 375 F.3d 521, 524 (7th Cir. 2004)).[5]

In reply, Defendants argue that Plaintiff's self-induced state from his hunger strikes does not excuse his failure to timely exhaust his administrative remedies and that "[t]here is no record of [Plaintiff] filing" any inmate complaint, let alone two inmate complaints, regarding the Incident prior to the filing of GBCI-2021-13032 on August 24, 2023. ECF No. 26 at 1–2; *see id.* at 2 ("When an inmate submits an inmate complaint, [ICE] can either accept [it] or return it . . . . If the ICE returns [it], the ICE scans a copy of the inmate compl[aint] into the system and keeps it . . . If the ICE accepts the inmate complaint, the ICE enters the information into the Inmate Complaint History Report. Therefore, if an inmate submits an inmate complaint, there is always a record of [it]."). Alternatively, Defendants write, "if the Court believes that there is a genuine dispute regarding whether [Plaintiff] filed two earlier inmate complaints, [] Defendants request a hearing under *Pavey v. Conley*, 528 F.3d 494, 496–98 (7th Cir. 2008)". *Id.* at 3.

The Court will begin with Plaintiff's argument that he should be excused from administrative exhaustion because his hunger strikes made him dizzy and light-headed and rendered him incapable of properly exhausting. An administrative procedure is unavailable, and the failure to exhaust may therefore be excused, when "(1) the process operates as a 'simple dead end,' (2) when it is so opaque that it is incapable of use, or

---

[5] As in *Lanaghan v. Koch*, 902 F.3d 683 (7th Cir. 2018), "[n]o one disputes that [the plaintiff] failed to file his complaint within [fourteen days of the occurrence giving rise to the complaint]. The only question is whether those administrative remedies were actually available to him . . . ."

(3) when 'prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'" *Jackson v. Fed. Bureau of Prisons*, No. 2:20-cv-116-JPH-MG, 2021 U.S. Dist. LEXIS 159654, at *15 (S.D. Ind. Aug. 24, 2021) (quoting *Ross v. Blake*, 578 U.S. 632 (2016)). A prisoner's self-induced state of being light-headed and dizzy fits in none of those three circumstances.

It is true that the Seventh Circuit has written that when a prisoner's "personal circumstances preclude him from being able to make use of the process, it is not available to him," such that the failure to exhaust can be excused. *Smallwood v. Williams*, 59 F.4th 306, 315 (7th Cir. 2023). But such "personal circumstances" do not extend to intentionally self-induced or self-imposed hindrances. *See Lanaghan*, 902 F.3d at 688 ("We have found remedies unavailable in a number of instances in which the inmate, *through no fault of his own,* could not have accessed the grievance procedure . . . . [T]he proper focus is . . . whether [the plaintiff] was not able to file the grievance within the time period *through no fault of his own.*") (citing *Hurst v. Hantke*, 634 F.3d 409, 412 (7th Cir. 2011), *Pyles v. Nwaobasi*, 829 F.3d 860, 866 (7th Cir. 2016), and *Swisher v. Porter Cnty. Sheriff's Dept.*, 769 F.3d 553, 555 (7th Cir. 2014)) (emphases added); *cf. Lynch v. Corizon, Inc.*, 764 F. App'x 552, 554 (7th Cir. 2019) (material issue of fact precluded summary judgment on issue of exhaustion where inmate swore by affidavit that "defendants prevented him from completing the grievance process by tampering with his medication dosages so that he could not think lucidly enough to do so"); *cf. Pavey*, 544 F.3d at 740 (acknowledging as relevant to exhaustion analysis that prisoner attested in affidavit that he "had been unable to exhaust [his administrative] remedies because he could not prepare the grievance himself, as he is left-handed and it was his left arm that was broken

[allegedly by excessive force of guards]"); *cf. Smallwood*, 59 F.4th at 314 ("[A] remedy that is available to the majority of inmates may not be available to those who are illiterate, blind, or whose individual circumstances otherwise render the procedures unavailable to them.") (citing *Lanaghan*, 902 F.3d at 688); *cf. Weiss v. Barribeau*, 853 F.3d 873, 874–75 (7th Cir. 2017) (noting as relevant in failure-to-exhaust analysis that prisoner was involuntarily committed and involuntarily administered psychotropic medications which impaired his ability to write and pursue grievance).

In each of these cases, the circumstances considered by the respective courts as capable of affecting the prisoner's ability to exhaust were not self-imposed and were outside of those prisoners' control—for example, infirmities inflicted upon them by others. The same cannot be said here, and the Court has no discretion to excuse a failure to exhaust based on circumstances not recognized by law. *Ross*, 578 U.S. at 639 ("[The PLRA's] mandatory language means a court may not excuse a failure to exhaust, even to take [special] circumstances into account.") (citing *Miller v. French*, 530 U.S. 327, 337 (2000)). Accordingly, the Court concludes that Plaintiff's self-imposed hunger strike does not excuse his failure to exhaust.[6]

Next, the Court addresses Plaintiff's claim that he in fact submitted two complaints before he submitted GBCI-2021-13032 in August, and that the ICE apparently failed to acknowledge them. It is true that "[a]n administrative scheme can be 'unavailable' to a prisoner," and the failure to exhaust may therefore be excused, "when a prison fails to respond to a

---

[6]Additionally, the fact that Plaintiff filed six inmate complaints between the date of the Incident and the date of the DOC's receipt of GBCI-2021-13032, *see* ECF No. 21-1 at 12; ECF No. 22-1 at 16, demonstrates as a factual matter that Plaintiff was not, in fact, prevented by his alleged dizziness and light-headedness from filing complaints during this time.

Page 10 of 14
Case 2:22-cv-00702-JPS   Filed 12/14/23   Page 10 of 14   Document 34

prisoner's grievance and, in so doing, prevents that prisoner from exhausting administrative remedies." *Reid v. Balota*, 962 F.3d 325, 329 (7th Cir. 2020) (quoting *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006)).

This is essentially what Plaintiff alleges—he has sworn by declaration that he submitted two complaints about the Incident before submitting GBCI-2021-13032 and that ICE "never got back with" him about them. ECF No. 23 at 2; ECF No. 28 at 1–2 (sworn declaration) ("I Plaintiff did submit [my] grievance more than once, 3 times, once it go[es] out of my cell door, I don't know what the officers do with it, and its on the ICE department to respond and let me know they got it . . . ."). Nevertheless, in these circumstances, Plaintiff's sworn statement is insufficient to raise a genuine dispute of material fact to preclude summary judgment on the issue of exhaustion.

"[B]ecause the Department of Corrections uses a mandatory receipt system for inmate complaints, plaintiff cannot demonstrate an issue of fact with respect to exhaustion by merely asserting that he submitted a grievance for which there is no record and for which he did not receive a receipt." *Grender v. McCullick*, No. 19-cv-403-bbc, 2020 U.S. Dist. LEXIS 21004, at *5 (W.D. Wis. Feb. 7, 2020) (citing *Lockett v. Bonson*, 937 F.3d 1016, 1026–27 (7th Cir. 2019) ("Mr. Lockett was obliged to regard the absence of a receipt as a red flag; he should have undertaken, through the complaint procedure, an inquiry to ascertain why he had not received this important document. Having failed to make that inquiry, he may not now counter evidence that the prison did not receive his administrative appeal with a bald assertion of a timely filing.")); *see also, e.g., Anderson v. Manderle*, No. 19-cv-853-jdp, 2021 U.S. Dist. LEXIS 42650, at *6 (W.D. Wis. Mar. 8, 2021) (prisoner's sworn statement that he submitted inmate complaint that was

apparently never received "alone isn't enough to properly exhaust his administrative remedies"); *Malwitz v. Subke*, No. 21-cv-404-bhl, 2022 U.S. Dist. LEXIS 35412, at *5–8 (E.D. Wis. Mar. 1, 2022) (noting, in case in which inmate claimed to have submitted a complaint to which he received no response, that "under *Lockett*, [plaintiff] cannot create a disputed fact when he has provided no evidence that he made a reasonable inquiry into the reason he had not received notice that ICE received his complaint.") (citing *Lockett*, 937 F.3d at 1027–28).

And the inmate's sworn affidavit, "while relevant and probative on the issues of whether he ever filed an appeal or received a receipt, is insufficient to establish that he ever exhausted the opportunity to resolve the matter within the prison system . . . ." *Lockett*, 937 F.3d at 1027–28. Plaintiff "does not have the receipt [of the submission of his complaint], and he has made no assertion that he ever made a reasonable inquiry as to why he never received one. Since the regulations clearly give him the path for making such an inquiry, he has not exhausted the available remedies." *Id.* at 1028.

That guidance is dispositive as to this issue. Wisconsin's ICRS provides that "[t]he ICE shall give written notice to the inmate within 10 days of collection that the complaint has been received." Wis. Admin. Code § DOC 310.10(4). Should the inmate hear nothing back "within 45 days after the date of acknowledgement under s. DOC 310.10(4)," then "the inmate may appeal to the CCE." *Id.* § DOC 310.11(3). Plaintiff failed to take advantage of this opportunity to "appeal to the CCE," and so he failed to exhaust his administrative remedies with respect to the allegedly missing complaints.

5.  **CONCLUSION**

For the reasons discussed herein, the Court will grant Defendants' motion for summary judgment on exhaustion grounds and will dismiss this case without prejudice. *Burrell*, 431 F.3d at 285 (citing *Walker v. Thompson*, 288 F.3d 1005, 1009 (7th Cir. 2002) and *Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004)).

Accordingly,

**IT IS ORDERED** that Defendants James Elsinger, Todd Hamilton, Derek Henning, Alleah Pynenberg, and Kurt Schierland's motion for summary judgment, ECF No. 18, be and the same is hereby **GRANTED**; and

**IT IS FURTHER ORDERED** that this case be and the same is hereby **DISMISSED without prejudice** for failure to exhaust administrative remedies.

The Clerk of Court is instructed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 14th day of December, 2023.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge

This Order and the judgment to follow are final. A dissatisfied party may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **thirty (30)** days of the entry of judgment. *See* Fed. R. of App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the thirty-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). If Plaintiff appeals, he will be liable for the $505.00 appellate filing fee regardless of the appeal's outcome. If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* with this Court. *See* Fed. R. App. P. 24(a)(1). Plaintiff may be assessed another "strike" by the Court of Appeals if his appeal is found to be non-meritorious. *See* 28 U.S.C. §1915(g). If Plaintiff accumulates three strikes, he will not be able to file an action in federal court (except as a petition for habeas corpus relief) without prepaying the filing fee unless he demonstrates that he is in imminent danger of serous physical injury. *Id.*

Under limited circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **twenty-eight (28)** days of the entry of judgment. The Court cannot extend this deadline. *See* Fed. R. Civ P. 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The Court cannot extend this deadline. *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.